NOT FOR PUBLICATION

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| ANDREA V. SMITH, | : |
| | : Civil Action No. 3:13-cv-00030 |
| Plaintiff, | : |
| v. | : |
| | : **OPINION** |
| THE WEST INDIAN COMPANY LIMITED, | : |
| and JOSEPH BOSCHULTE in his personal | : |
| capacity, the BOARD OF DIRECTORS OF | : January 7, 2014 |
| THE WEST INDIAN COMPANY LIMITED, | : |
| and JOSEPH BOSCHULTE, as PRESIDENT | : |
| and CHIEF EXECUTIVE OFFICER OF THE | : |
| WEST INDIAN COMPANY LIMITED, | : |
| | : |
| Defendants. | : |
| | : |

**WIGENTON**, District Judge.

Before the Court are defendants The West Indian Company Limited ("WICO") and Joseph Boschulte's ("Boschulte") (collectively "Defendants") Motion to Dismiss and Boschulte's individual Motion to Dismiss plaintiff Andrea V. Smith's ("Plaintiff") Complaint ("Boschulte's Motion"). Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Boschulte individually moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule of Civil Procedure 12.1. Defendants also claim that service of process to the WICO Board should be quashed pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) and dismissed as to the WICO Board of Directors ("WICO Board").

Venue is proper pursuant to 28 U.S.C. § 1391(b).

This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **GRANTS** Defendants' Motion to Dismiss and Boschulte's Motion.

**FACTUAL HISTORY**

In 1981, Plaintiff began working at WICO as a bookkeeper, and in 1987, was promoted to Controller. (Compl. ¶ 16.) In 1997, the WICO Board appointed Plaintiff to be Vice President and Treasurer, and in 2012, the WICO Board appointed Plaintiff to be the Chief Financial Officer ("CFO") of WICO. (*Id.* ¶ 17.) After Edward Thomas, the President and Chief Executive Officer ("CEO") of WICO, retired, Plaintiff was appointed to serve as the Acting President and CEO of WICO. (*Id.* ¶ 18.) Plaintiff continued in this position for almost a year, until Boschulte was hired. (*Id.* ¶ 19.) Throughout her career at WICO, Plaintiff had a history of receiving regular salary increases and cash bonuses due to her performance. (*Id.* ¶¶15, 20.)

On May 1, 2012, Boschulte started working in his position as President and CEO of WICO, and soon after submitted an invoice for expenses that he "incurred while attending SeaTrade in March of 2012." (*Id.* ¶ 21.) However, Plaintiff did not pay Boschulte's invoices as Boschulte was not yet an employee when the expenses were incurred. (*Id.* ¶ 22.) Plaintiff claims that as a result, Boschulte took retaliatory actions against Plaintiff "including but not limited to nitpicking at every issue and disciplining Plaintiff for every perceived company infraction," as well as excluding Plaintiff from meetings she had normally attended in the past. (*Id.* ¶¶ 23-24.) Boschulte appointed someone else instead of Plaintiff to be the Acting President and CEO when Boschulte was out of the office. (*Id.* ¶ 24.) Additionally, Plaintiff was not consulted in regard to WICO financial matters even though Plaintiff was the CFO. (*Id.* ¶ 25.) According to Plaintiff, in contrast to WICO's express employment policies, Boschulte also gave out raises without consulting Plaintiff and following the handbook. (*Id.* ¶ 26.) Plaintiff claims she did not know what Boschulte's

2

expectations of her were and was ridiculed for not meeting these expectations. (*Id.* ¶¶ 27-28.) When WICO was going to appear before the Virgin Islands Legislature's Finance Committee on August 29, 2012, Boschulte disregarded custom and did not consult Plaintiff; instead, Plaintiff provided Boschulte with the information that he requested, but she was not invited to attend the meeting. (*Id.* ¶ 29.) Subsequently, Boschulte suspended Plaintiff without pay for one week for not attending the hearing, even though Boschulte knew the disciplinary action was unwarranted. (*Id.* ¶ 30.)

In or around July or August of 2012, Gershwin Sprauve ("Sprauve"), who was the Chief Operating Officer ("COO"), sent a letter to the WICO Board complaining about Boschulte's inappropriate use of language to staff and his unprofessional attitude. (*Id.* ¶ 31.) The WICO Board began an investigation and interviewed Plaintiff; whereafter, Boschulte became angry with Plaintiff and stated he did not trust her, nor did he have confidence in her. (*Id.* ¶¶ 32-33, 41.) Later, when Boschulte made a new organizational chart for WICO, Plaintiff's name was not on the chart. (*Id.* ¶ 38.) Boschulte complained to the WICO Board about Plaintiff "and recommended that she be terminated or be asked to retire because she is incompetent." (*Id.* ¶ 39.) Boschulte also complained that Plaintiff conspired with Sprauve to sell a WICO vehicle, but Plaintiff claims the sale was allowed under company policy. (*Id.* ¶¶ 34-37, 39.) Plaintiff also claims that Boschulte's complaints to the WICO Board were misleading and the WICO Board should have known that Boschulte's allegations were false. (*Id.* ¶¶ 40, 42.) The WICO Board followed Boschulte's recommendation and considered either terminating Plaintiff or asking her to retire. (*Id.* ¶ 43.)

In December 2012, Boschulte became a member of the WICO Board. (*Id.* ¶ 45.) On January 11, 2013, Boschulte terminated Plaintiff for "'failure to execute'" and gave her twenty minutes to clear out the office that she occupied for more than thirty years. (*Id.* ¶¶ 46-47.)

Boschulte also called security, as well as the police, to escort Plaintiff out of her office after the twenty minutes he had given her passed.  (*Id.* ¶ 48.)

Plaintiff alleges that Act No. 5826 "created WICO as a public instrumentality and public corporation of the Government of the Virgin Islands," and as such, "WICO employees can only be terminated for good cause."  (*Id.* ¶ 49.)  Plaintiff alleges that she was retaliated against by Boschulte for participating in the WICO Board's investigation of Boschulte.  (*Id.* ¶ 50.)  Therefore, according to Plaintiff, Boschulte had a pretextual reason for terminating her, and thereby violated the First Amendment of the United States Constitution.  (*Id.*)  Plaintiff also alleges that she was terminated without being given a hearing in violation of the due process clause of the Fourteenth Amendment.  (*Id.* ¶ 49.)  Further, Plaintiff alleges that she was wrongfully terminated on January 11, 2013, in violation of the Virgin Islands Wrongful Discharge Statute.  (*Id.* ¶ 51.)  Plaintiff states that there is no evidence that she violated WICO's policy and that the WICO Board should have known Boschulte was in a position to gain something from making allegations against Plaintiff, where Plaintiff had refused to pay unauthorized reimbursement submissions signed by Boschulte himself.  (*Id.* ¶¶ 52-53.)  Furthermore, Plaintiff states that WICO did not grant Plaintiff the benefit of the progressive disciplinary program that applies to all employees, contrary to WICO's express written policies.  (*Id.* ¶ 54.)  Accordingly, Plaintiff alleges that her termination was against WICO's employment policies and as a result, she suffered "economic loss, embarrassment, humiliation, emotional distress[,] and shame."  (*Id.*)

**PROCEDURAL HISTORY**

On March 19, 2013, Plaintiff filed a Complaint in this Court alleging the following: (Count I) First Amendment violation; (Count II) Fourteenth Amendment violation; (Count III) Virgin Islands Wrongful Discharge; (Count IV) Breach of Contract; (Count V) Defamation; (Count VI)

Prima Facie Torts claim; (Count VIII) Tortious Interference with Contract; (Count IX) Intentional

Infliction of Emotional Distress; (Count X) Negligent Hiring and Supervision; (Count XI) Breach

of Covenant of Good Faith and Fair Dealing; (Count XII) Civil Conspiracy; (Count XIII)

Misrepresentation and Fraud; (Count XIV) Invasion of Privacy: False Light; (Count XV) Violation

of Employee Handbook Claim; (Count XVI) First Amendment Freedom of Speech violation;

(Count XVIII) First Amendment (Free Association) Claim, and three counts of 42 U.S.C. § 1983

violations against Boschulte in his personal capacity (Counts VII, XVII, IXX).  (Compl., Dkt. No.

1.)

On May 9, 2013, Boschulte in his individual capacity filed a Motion to Dismiss.  (Dkt. No.

21.)  On May 10, 2013, WICO and Boschulte—in both his personal and official capacity as CEO

of WICO—filed the instant Motion to Dismiss.  (Dkt. No. 23.)  Plaintiff opposed Boschulte's

Motion on June 7, 2013 and opposed Defendants' Motion on June 17, 2003.  (Dkt. Nos. 28, 30.)

Defendants collectively replied on June 21, 2013.  (Dkt. Nos. 17, 32.)[1]

**LEGAL STANDARD**

*Motion to Dismiss Under Rule 12(b)(1)*

A defendant may move to dismiss claims for lack of subject matter jurisdiction pursuant to

Federal Rule 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1).  In a Rule 12(b)(1) motion, no presumption

of truthfulness attaches to plaintiff's claims, and disputed material facts will not preclude the court

from evaluating the merits of jurisdictional claims.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*,

549 F.2d 884, 891 (3d Cir. 1977); *Airlines Reporting Corp. v. Belfon*, No. 2003/146, 2010 WL

3664065, at *12 (D.V.I. Sept. 16, 2010) (citing *Mortensen*, 549 F.2d at 891).  Furthermore, the

plaintiff bears the burden to establish subject matter jurisdiction.  *See Kokkonen v. Guardian Life*

---

[1] The record was supplemented with additional authority by the Defendants on December 11, 2013.

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Ballentine v. Roberts*, 50 V.I. 722, 724 n.4, Civ. No. 2008–60, 2008 WL 4560742, at *1 (D.V.I. Oct. 8, 2008).

***Motion to Dismiss Under Rule 12(b)(4)***

A defendant may move to dismiss for "insufficient process" pursuant to Federal Rule 12(b)(4). Fed. R. Civ. P. 12(b)(4). When considering a 12(b)(4) motion to dismiss, "[d]istrict courts possess broad discretion." *Jarvis v. Gov't of V.I.*, No. 07-117, 2009 WL 367727, at *3 (D.V.I. Feb. 12, 2009) (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3d Cir. 1992)). If a summons fails to properly name the parties pursuant to Rule 4(a), it is void. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) (explaining that a mistake in the use of Rule 4 "'can be fatal'" (quoting Fed. R. Civ. P. 4 cmt. C4-1)). "[T]he failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Ackerman v. Beth Isr. Cemetery Ass'n*, No. 09-1097, 2010 WL 2651299, at *3 (D.N.J. June 25, 2010) (internal citation and quotation marks omitted).

***Motion to Dismiss or Quash Under Rule 12(b)(5)***

A defendant may move to dismiss for "insufficiency of service of process" pursuant to Federal Rule 12(b)(5). Fed. R. Civ. P. 12(b)(5). In a Rule 12(b)(5) motion, the party effecting service "'has the burden of demonstrating validity when an objection to the service is made.'" *Cruz v. Matthews*, No. 2007-40, 2011 WL 797663, at *1 (D.V.I. Feb. 28, 2011) (quoting *Suegart v. U.S. Customs Serv.*, 180 F.R.D. 276, 278 (E.D. Pa. 1998)); *see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) ("[T]he party asserting the validity of service bears the burden of proof on that issue."). When a named defendant "has not been properly served . . . district courts possess broad discretion to either dismiss the plaintiff's complaint for

failure to effect service or to simply quash service of process." *Umbenhauer*, 969 F.2d at 30.  If it is possible that service can properly be obtained, dismissing plaintiff's complaint would be inappropriate. *Id.*  However, where there is no showing of "a reasonable prospect that service by alternate means could be effected[,]" dismissal of the complaint is appropriate. *Richardson v. Ingram Corp.*, 374 F.2d 502, 503 (3d Cir. 1967).

### *Motion to Dismiss Under Rule 12(b)(6)*

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint alleges "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that "Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief" (quoting *Twombly*, 550 U.S. at 555 n.3) (internal quotation marks omitted)).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  If

the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2).  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (second alteration in original) (internal citations omitted).  The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  *Phillips*, 515 F.3d at 234 (alterations in original) (quoting *Twombly*, 550 U.S. at 556).

In *Fowler v. UPMC Shadyside*, the Third Circuit directed district courts to conduct a two-part analysis.  578 F.3d 203, 210 (2009).  First, the court must separate the factual elements from the legal conclusions.  *See id.*  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678).  Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."  *Id.* (citing *Phillips*, 515 F.3d at 234-35).

### Motion to Dismiss Under Local Rule of Civil Procedure 12.1

Pursuant to Local Rule of Civil Procedure 12.1, a party can make a dispositive motion. V.I. Local R. Civ. P. 12.1.  The Local Rule itself states only specific procedures to "govern dispositive motions filed pursuant to Federal Rule of Civil Procedure 12."  *Id.*

DISCUSSION

I.      **Public Versus Private Status of WICO and its Employees**

The first and central issue raised in Defendants' Motion to Dismiss is whether WICO is a public corporation with public employees versus a private entity with private employees. Whether this Court has jurisdiction over this matter turns on this issue. Based on the parties' and Court's review, there is no case law in this district addressing WICO's status as a private or public corporation or whether WICO employees are considered "public employees," other than the recently decided, *Sprauve v. West Indian Co.*, No. 13-08, 2013 WL 5542902 (D.V.I. Oct. 8, 2013) (issued by this Court). However, this issue has also been considered by the Public Employees Relations Board ("PERB")—the administrative agency charged with enforcing statutory guidelines regarding Public Employee Labor Relations. *See* 24 V.I.C. § 361 ("It is the purpose of this [Public Employee Labor Relations] chapter to provide for orderly and constructive relationships between public employers and their employees."); *see generally* 24 V.I.C. § 365(a).

**A. PERB Authority**

It is well-settled that "[t]he interpretation of a statutory scheme by the administrative agency charged with its enforcement is entitled to great deference." *Abramson v. Georgetown Consulting Grp., Inc.*, 765 F. Supp. 255, 259 (D.V.I. 1991) (citing *Equal Emp't Opportunity Comm'n v. Associated Dry Goods Corp.*, 449 U.S. 590, 600 n.17 (1981)), *aff'd sub nom. Abramson v. Madan*, 952 F.2d 1391 (3d Cir. 1991); *see N.L.R.B. v. Boeing Co.*, 412 U.S. 67, 74-75 (1973); *Westinghouse Elec. Corp. v. U.S. Nuclear Regulatory Comm'n*, 555 F.2d 82, 91 n.44 (3d Cir. 1977). Moreover, the Third Circuit Court has directed courts "'to regard as controlling a reasonable, consistently applied administrative interpretation.'" *Id.* (quoting *N. Ind. Pub. Serv. Co. v. Porter Cnty. Chapter of Izaak Walton League, Inc.*, 423 U.S. 12, 15 (1975)).

9

In two recent decisions, *UIW-SIU/Browne & Challenger v. WICO* and *Sprauve v. WICO*, PERB addressed whether WICO employees are considered "public employees" under 24 V.I.C. § 362(g). *See UIW-SIU/Browne & Challenger v. WICO*, PERB-ULPC-12-14-T, at 6 (Jan. 31, 2013), (Defs.' Exh. 2); *Sprauve v. WICO*, PERB-GSA-13-01T, at 4-5 (Apr. 24, 2013), (Defs.' Exh. 3); *see also* 24 V.I.C. § 362(g). In *UIW-SIU/Browne,* PERB noted that the "law clearly states that a public employee must be a person holding a position by appointment in the service of a public employer." PERB-ULPC-12-14-T at 7, (Defs.' Exh. 3). PERB concluded that WICO employees were not "public employees" because WICO operated as a private corporation, its employees were hired by WICO management and not through appointment by the Division of Personnel, and WICO employees did not participate in the Government Employees' Retirement System. *Id.* at 6-7. Similarly, in *Sprauve v. WICO*, PERB concluded WICO employees are not government or public employees. PERB-GSA-13-01T at 5, (Defs.' Exh. 3).

Essentially, in both decisions, PERB determined that WICO employees do not fall within the statute's meaning of "public employees." *UIW-SIU/Browne*, PERB-ULPC-12-14-T at 7, (Defs.' Exh. 2); *Sprauve*, PERB-GSA-13-01T at 5, (Defs.' Exh. 3). In light of this determination, PERB declined jurisdiction over the WICO employees. *See UIW-SIU/Browne*, PERB-ULPC-12-14-T at 7-8, (Defs.' Exh. 2); *Sprauve*, PERB-GSA-13-01T at 5, (Defs.' Exh. 3); *see also Sprauve*, No. 13-08, 2013 WL 5542902 at *2.

## B. Act No. 5826 of the Virgin Islands Legislature

The Government of the Virgin Islands purchased shares of WICO in 1993 pursuant to Act No. 5826 of the Virgin Islands Legislature. Per Section 8(b) of Act No. 5826, WICO was "granted the status and authority of a public corporation and governmental instrumentality of the Government of the Virgin Islands of the United States and [was] deemed to be a public entity

operating on behalf of the Government, rather than a private corporation." Act No. 5826 § 8. Plaintiff argues that WICO was granted public status by virtue of Act No. 5826. (Pl.'s Opp'n 7.) However, Defendants argue that WICO enjoys "special dual status" as both a public and private entity. (Defs.' Br. 3.) Defendants acknowledge language in Act No. 5826 which confers benefits to WICO as a public corporation such that it is "not . . . required to pay any taxes or assessments on any of the property acquired or to be acquired by it, or on its operations or activities, or on the income derived from any of its operations or activities." Act No. 5826 § 8; (Defs.' Br. 3-4.) Nevertheless, Defendants assert that WICO otherwise functions as a private corporation under the laws of the Virgin Islands, as authorized by Act No. 5826. *See* Act No. 5826 § 4; (Defs.' Br. 4.)

### C.  Analysis of WICO Status

Based on the record and relevant authority, this Court finds that WICO cannot be considered a purely public entity. It is clear that WICO has been granted certain benefits and characteristics of a public entity. For instance, since 1993, WICO has enjoyed the tax benefits conferred by Act No. 5826 when the Government of the Virgin Islands bought shares of the company. This alone, however, does not exemplify the characteristics of a public corporation. To the contrary, WICO appears to function as a private corporation, as permitted by the Act. *See* Act No. 5826 § 8 (noting that WICO could continue "to undertake any act or activity permitted under the Company Charter and permissible for a general business corporation under the general corporation laws of the Virgin Islands"); *see also UIW-SIU/Browne*, PERB-ULPC-12-14-T at 3, (Defs.' Exh. 2) (stating that WICO is "a public entity with the authority of a public corporation, but *it functions as a private corporation*" (emphasis added)); *Sprauve*, No. 13-08, 2013 WL 5542902 at *5 (concluding WICO is not a purely public entity). For example, WICO's employees are not beneficiaries of the Government Employees' Retirement System. Furthermore, there is no

indication that WICO employees are given appointed positions in the service of a public employer. Consistent with PERB's recent decisions, this Court finds that WICO employees are not "public employees."  Additionally, as WICO is not a purely public entity, it will not be deemed a "public corporation."

## II.   Jurisdiction

Federal courts can only adjudicate matters where subject matter jurisdiction exists, and without such jurisdiction, a court must decline to entertain the lawsuit.  *See Airlines Reporting Corp. v. Belfon*, 2010 WL 3664065, at *12.  Plaintiff claims that this Court has jurisdiction in this matter pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  (*See* Compl. ¶ 3.)  As discussed below, this Court finds that none of these bases confer jurisdiction in this matter.

### A.  Jurisdiction Under 28 U.S.C. § 1983 (Counts VII, XVII, IXX)

To establish jurisdiction under 28 U.S.C. § 1983, a constitutional violation must have occurred.  *See Gibbs v. Turnbull*, No. 1999-0061, 2008 WL 2917824, at *2 (D.V.I. July 24, 2008) ("Without a constitutional violation, a 42 U.S.C. § 1983 action cannot stand.") (citing *Deary v. Evans*, 570 F. Supp. 189, 197 (D.V.I. 1983)); *see also Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).  When evaluating a § 1983 claim, the court must conduct an inquiry as to whether the party against whom the claim is asserted is "acting under color of state law."  *D'Aurizio v. Palisades Park*, 963 F. Supp. 387, 392 (D.N.J. 1997) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 n.15 (3d Cir. 1995)) (internal quotation marks omitted); *see also McCauley v. Univ. of V.I.*, No. 2005–188, 2009 WL 2634368, at *4 (D.V.I. Aug. 21, 2009), *aff'd in part, rev'd in part on other grounds by*, 618 F.3d 232 (3d Cir. 2010).  "Where the actors are not state or municipal officials, but are private individuals . . . [a court] still must address whether their activity can

nevertheless be deemed to be under color of law." *Groman*, 47 F.3d at 638. A private party acting in concert with a state agency or official may be acting under color of state law. *See D'Aurizio*, 963 F. Supp. at 392. "However, a private action 'is not converted into one under color of state law merely by some tenuous connection to the state action. The issue is not whether the state was involved in some way . . . but whether the action taken can be fairly attributed to the state itself.'" *Id.* (quoting *Groman*, 47 F.3d at 638-39); *see Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005).

This Court has concluded that WICO is a private entity and Boschulte is a private employee. Plaintiff has not alleged that Defendants acted in concert with any state agency or official. As Defendants were not acting "under color of state law," Plaintiff's § 1983 claims in Counts VII, XVII, and IXX fail. *See Muniz v. Spevack*, No. Civ. 05-2370, 2006 WL 208571, at *3 (D.N.J. Jan. 25, 2006) (dismissing § 1983 claims against a private person for lack of subject matter jurisdiction). As Plaintiff fails to assert any viable § 1983 claims, this Court does not have subject matter jurisdiction under 42 U.S.C. § 1983.

**B. Jurisdiction Under 28 U.S.C. § 1343(a)(3)**

Pursuant to 28 U.S.C. § 1343(a)(3), federal courts have jurisdiction over civil rights claims; however, the statute does not "create a cause of action in and of itself." *Eddy v. V.I. Water & Power Auth.*, 961 F. Supp. 113, 115 (D.V.I. 1997). Instead, "section 1343(a)(3) 'is the jurisdictional counterpart' of the substantive law contained in section 1983." *Id.* (quoting *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 613 (1979)). Thus, this Court will only have jurisdiction under § 1343(a)(3) if plaintiff's complaint states a valid § 1983 claim. *See Payton v. Pub. Defender Admin. Bd.*, No. 2006-98, 2007 WL 309946, at *3 (D.V.I. Jan. 22, 2007) (noting that § 1343(a)(3) is only a jurisdictional grant to provide "subject matter jurisdiction over claims 'based on alleged violations of provisions of the federal Constitution that secure rights against

those who act under color of state law and over claims arising from federal statutes'" that protect

equal rights) (quoting *Eddy*, 961 F. Supp. at 115)).

As Plaintiff's § 1983 claims are dismissed, there is no subject matter jurisdiction under 28

U.S.C. § 1343(a)(3).

### C.  Jurisdiction Under 28 U.S.C. § 1331

Section 1331 provides for jurisdiction of civil claims "arising under" federal law.

28 U.S.C. § 1331.  A court should not exercise jurisdiction over a claim that does not "arise under"

federal law when the plaintiff could proceed solely on state-law claims.  *Gardiner v. St. Croix Dist.*

*Governing Bd. of Dirs.*, 859 F. Supp. 2d 728, 735-36 (D.V.I. 2012) ("[F]ederal jurisdiction should

not be exercised over a state-law claim when the Complaint provides independent state and federal-

law theories.") (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)));

*see Bauchelle v. AT&T Corp.*, 989 F. Supp. 636, 641 (D.N.J. 1997) ("[W]here [p]laintiff's causes

of action are created by state law . . . there is no federal jurisdiction over the matter.").

Here, Plaintiff's remaining allegations that may satisfy § 1331 for jurisdictional purposes

are alleged violations of the First Amendment and Fourteenth Amendment.

### 1.  Plaintiff's First Amendment Claims (Counts I, XVIII)[2]

In the employment context, the First Amendment applies only to "state actions" that

concern public employees.  *See Urgent v. Hovensa, LLC*, No. 2006/0105, 2008 WL 4526677, at

\*7 (D.V.I. Oct. 2, 2008).  Similarly, "the First Amendment applies only to public employers."

*Fogarty v. Boles*, 121 F.3d 886, 890 (3d Cir. 1997).  In *Urgent*, the plaintiff's First Amendment

claim was dismissed because the defendant was "a private employer rather than a state actor and

its actions . . . [did] not constitute state action under the law."   2008 WL 4256677, at \*7.

---

[2] Count IXX relies, in part on the presumption that Plaintiff's association with Sprauve was protected by the First Amendment. (*See* Compl. ¶¶173-179.)

Additionally, the Third Circuit has declined to read the First Amendment so broadly as to create "limitations on employers' discretion to fire at-will employees." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 112 (3d Cir. 2003).

This Court has determined that WICO is not a public entity and its employees are not "public employees." As a result, Plaintiff's First Amendment claims against Boschulte and WICO are not viable and thus dismissed. Count I is a First Amendment claim for retaliation and Count XVIII is for a violation of the First Amendment based on free association. As Plaintiff is not a public employee, this Court need not address the sufficiency of Plaintiff's First Amendment retaliation claim. However, this Court notes that Plaintiff is not a public employee, and even if Plaintiff was a public employee, her claims would still fail. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Smith v. V.I. Hous. Auth.*, No. 09-cv-00011, 2011 WL 797373, at *6 (D.V.I. Feb. 28, 2011) (mem.) (quoting *Thomas v. Independence Tp.*, 463 F.3d 285, 296 (3d Cir. 2006)) (internal quotation marks omitted).

Here, Plaintiff does not satisfy the first element because Plaintiff's speech was not protected speech by a government employee. *See Greene v. V.I. Water & Power*, No. 1:06-cv-11, 2011 WL 3032466, at *7 (D.V.I. July 22, 2011) ("Speech by a government employee is a protected activity if when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of

15

the statement he made." (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)) (internal quotation marks omitted)).

In regard to Plaintiff's free association claim, even if Plaintiff was a government employee, she did not allege sufficient facts to suggest she "associated" with Sprauve. (Defs.' Br. 11); *see Young v. New Sewickley Tp.*, 160 F. App'x 263, 266 (3d Cir. 2005). Although Plaintiff does not allege whether her claim falls under protected expressive association or protected intimate association, "not every personal relationship falls within the ambit of the First Amendment." *Lord v. Erie Cnty.*, 476 F. App'x 962, 965 (3d Cir. 2013); *see Roberts v. Mentzer*, 382 F. App'x 158, 163 (3d Cir. 2010). There are no facts to allege that there was intimate association afforded to "personal relationships characterized by a high degree of selectivity and intimacy, 'bound by blood,' or devoted towards the 'creation and sustenance of a family.'" *Lord*, 476 F. App'x at 965 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1205 (3d Cir. 1988)). Furthermore, Plaintiff's claim does not appear to fall under expressive association that "protects the ability of individuals to gather in order to pursue political, social, economic, educational, religious, and cultural ends." *Roberts*, 382 F. App'x at 163.

### 2. Plaintiff's Fourteenth Amendment Claim (Count II)

A Fourteenth Amendment due process violation requires an inquiry as to whether "state action" existed in order to constitute such a violation. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ("Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"). This inquiry under the Fourteenth Amendment is "identical in most contexts" to the "under color of state law" inquiry under 42 U.S.C. § 1983. *Groman*, 47 F.3d at 638 n.15 (citing *Robison v. Canterbury Village, Inc.*, 848 F.2d 424, 427 n.3 (3d Cir. 1988)); *see also Lugar*, 457 U.S. at 928 (noting that this was stated explicitly by the

16

Supreme Court: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment" (quoting *United States v. Price*, 383 U.S. 787, 794 n.7 (1966))).

As previously concluded, WICO is not a public entity and its employees are not public employees. Thus, Plaintiff's Fourteenth Amendment Due Process claims against WICO and Boschulte in his capacity as President and CEO of WICO fail because these Defendants are private actors. Furthermore, even as private actors, Plaintiff's Fourteenth Amendment claim fails against all Defendants, including Boschulte in his personal capacity, because the Defendants were not participating in "joint activity" with the Government of the Virgin Islands or any state actor. Even if Plaintiff was fired based upon a Virgin Islands statute, Plaintiff's claim would still fail. *See Lugar*, 457 U.S. at 938-39. Accordingly, Plaintiff's Fourteenth Amendment claims must be dismissed.

Plaintiff fails to assert a viable claim arising under federal law, and thus this Court does not have jurisdiction under 28 U.S.C. § 1331.

### D. Supplemental Jurisdiction over Plaintiff's State Law Claims Under 28 U.S.C. § 1367 (Counts III-VI, VIII-XV)

Under 28 U.S.C. § 1367, federal courts can exercise jurisdiction over state law claims. § 1367(a). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Stehney v. Perry*, 907 F. Supp. 806, 825 (D.N.J. 1995) ("[A] federal district court may decline to exercise its supplemental jurisdiction over state law claims if all federal claims are dismissed."); *Washington v. Specialty Risk Servs.*, No. 12-cv-1393, 2012 WL 3528051, at *2 (D.N.J. Aug. 15, 2012) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the

17

pendent state claims." (alterations in original) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotation marks omitted).

In the instant matter, this Court has dismissed all of Plaintiff's claims arising under federal law.  This Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.  Plaintiff's state law claims are thus dismissed without prejudice.

## III.     Service of Process

Pursuant to Federal Rule of Civil Procedure 17(b)(2), the "[c]apacity to sue or be sued . . . for a corporation, [is determined] by the law under which it was organized."  Fed. R. Civ. P. 17(b)(2).  According to Virgin Islands law, a board of directors cannot sue other parties or be sued by another party in its own capacity because it "is not a suable entity."  *Bd. of Dirs. of Shibui v. McGuire*, No. 302/1978, 1979 WL 447867, at *3 (Terr. V.I. May 30, 1979) (noting that "the board of directors . . . is not the real party in interest); *see also Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 678 (N.D. W. Va. 2012) ("[A] corporate board of directors is not a legal entity separate and apart from the corporation itself and, thus, should not be named as a separate party.  This rule reflects the well-settled principle that the corporate entity does not exist separate from its board of directors." (internal citations and quotation marks omitted)).

Defendants argue that as an internal structure, a board of directors that cannot be sued cannot receive service of process, especially where there is no registered agent upon which process can be served.  (Defs.' Br. 16-18; Defs.' Reply 16-17.)  *Cf.* 13 V.I.C. § 32(2) (stating that a corporation has the special power to "sue and be sued by its corporate name"); 13 V.I.C. § 51 ("Every corporation shall . . . have a resident agent . . . on whom service of legal process against the corporation can be made.").  This Court agrees.

As personal service cannot be properly effected on the WICO Board pursuant to Fed. R. Civ. P. 4, and Plaintiff has failed to meet this burden of proof by asserting no legal authority to the contrary, Plaintiff's Complaint is dismissed against the WICO Board pursuant to Rule 12(b)(4) and 12(b)(5). *See* Fed. R. Civ. P. 12(b)(4), (5).

**IV.      Boschulte's Motion to Dismiss**

Boschulte's individual Motion to Dismiss addresses Plaintiff's arguments for similar grounds as in Defendants' collective Motion to Dismiss.  As such, Boschulte's Motion is granted for the same reasons.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss and Boschulte's Motion are **GRANTED**.

s/Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:      United States Magistrate Judge Ruth Miller